UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO. 08-60455-CIV-MARRA/JOHNSON

MATTHEW E. FORBES, and
FORBESGALLAGHER, LLC,

    Plaintiffs,

v.

LENOX FINANCIAL MORTGAGE, LLC;
COGENT CLOSING ASSOCIATES, LLC;
CLOSERV, LLC; JOHN SHIBLEY,
individually; and TODD PATRICK
EHRLICH, individually,

    Defendants.
_____/

## OPINION AND ORDER TRANSFERRING CASE
## TO THE NORTHERN DISTRICT OF GEORGIA

THIS CAUSE comes before the Court on Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (DE 17), filed May 21, 2008. The motion is now fully briefed and is ripe for review. The Court has carefully considered the motion and is otherwise fully advised in the premises.

**Background**

On March 31, 2008, Plaintiffs Matthew E. Forbes ("Forbes") and ForbesGallagher, LLC, (together, "Plaintiffs") filed their Complaint, which was superseded by their First Amended Complaint on May 7, 2008. In the Amended Complaint (hereinafter, "Complaint"), Plaintiffs assert four counts (breach of contract, unjust enrichment, fraud in the inducement, and tortious interference with business relations) against Defendants Lenox Financial Mortgage, LLC

1

("Lenox"), Cogent Closing Associates, LLC ("Cogent"), Closerv, LLC ("Closerv"), Jon Shibley ("Shibley"), and Todd Patrick Ehrlich ("Ehrlich") (together, "Defendants"). Defendants now move to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1), (2), (3), and (6).

This case arises out of an arrangement reached between Plaintiffs and Defendants, whereby Plaintiffs would process mortgage closings for all of Defendants customers in the State of Florida. (Compl. ¶¶ 24-26.) Defendants then allegedly reneged on the agreement. (Compl. ¶¶ 49, 50.) Plaintiffs now seek to recover moneys allegedly owed to them under the contract between the parties.

**Discussion**

Under Rule 12(b)(3) of the Federal Rules of Civil Procedure, a party may assert the defense of "improper venue." When a defendant objects to venue under Rule 12(b)(3), the plaintiff bears the burden of demonstrating that the venue it selected is proper. *See Delong Equipment Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988) (stating that plaintiff must make a prima facie showing of venue); *see also Bartholomew v. Va. Chiropractors Ass'n, Inc.*, 612 F.2d 812, 816 (4th Cir. 1979); *Grantham v. Challenge-Cook Bros., Inc.*, 420 F.2d 1182, 1184 (7th Cir. 1969); *BP Products North America, Inc. v. Super Stop 79, Inc.*, 464 F. Supp. 2d 1253, 1256 (S.D. Fla. 2006); *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004).[1] The Court may consider evidence outside of the pleadings and may make any findings of fact necessary to resolve a motion to dismiss for improper venue, so long as the resolution of

---

[1] The Court recognizes that the plaintiff's choice of venue is ordinarily accorded substantial deference. *See, e.g., Carrizosa v. Chiquita Brands International, Inc.*, No. 07-60821-CIV, 2007 WL 3458987 (S.D. Fla. Nov. 14, 2007). Plaintiff's choice of venue is only given this deference, however, when the venue selection has a proper basis in statute. Where such a basis is alleged to be lacking, the plaintiff bears the burden to show that the chosen forum is appropriate.

factual disputes is not an adjudication on the merits of a case. *Bryant v. Rich*, - - F.3d - -, Nos. 06-11116 & 06-12290, 2008 WL 2469405 at *5 (11th Cir. June 20, 2008). All facts alleged in the complaint are taken as true, as long as they are not controverted by the defendant's evidence. *Delong Equipment*, 840 F.2d at 845. All factual conflicts must be resolved in favor of the plaintiff. *Wai*, 315 F. Supp. 2d at 1268.

Because Plaintiffs assert this Court's exercise of diversity jurisdiction, venue is governed by 28 U.S.C. § 1391(a), which provides that a diversity case can only be brought in the following venues:

    1. A judicial district where any defendant resides when all defendants are resident in the same state;

    2. A judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or

    3. A judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if the action cannot be brought in any other jurisdiction.

The statute also explains that "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

In this case, Plaintiff alleges that venue is proper in the Southern District of Florida because "a substantial number of the properties for which closings at issue in this lawsuit occurred were located in this judicial district." (Compl. ¶ 5.) Plaintiff alleges that about 600 out of the 2,000 closings "at issue which gave rise to this lawsuit" occurred in this district. (*Id.*) Plaintiff thus claims that this Court is a proper venue pursuant to § 1391(a)(2), because a

"substantial part" of the events giving rise to their claims for breach of contract, unjust enrichment, and other tort claims occurred here.

Defendants respond that the Southern District is an improper venue. (Def. Mot. 7.) Relying on the allegations in the Complaint and in separately submitted affidavits, Defendants claim that Shibley and Ehrlich are residents of Georgia (specifically, the Northern District), not Florida. Further, the corporate Defendants are all Georgia corporations, making them subject to personal jurisdiction in Georgia. Thus, Defendants claim that venue is proper in the Northern District of Georgia, not the Southern District of Florida.

Defendants recognize that venue may be proper in more than one district. *See, e.g., Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003). However, Defendants claim that a "substantial part" of the events giving rise to Plaintiffs' claims did not arise in Florida simply because some of the mortgage closings took place in this district. Instead, Defendants argue that the fact that the closings took place in Florida has relatively little to do with Plaintiffs' specific causes of action (i.e., the formation and breach of the contract, the commission of any potential torts, etc.). These alleged events, Defendants claim, all took place in Georgia. In Defendants' opinion, any connections between Plaintiffs' claims and Florida are tenuous.

In their response to Defendants' motion, Plaintiffs rely solely on the allegations in the Complaint and have not supplemented their response with any other evidentiary support. Plaintiffs argue that the fact that 600 closings took place in Florida is sufficient because the "closings were more than tangentially connected to the district because they gave rise to the claim and without them, no cause of action would have arisen." (Pl. Resp. 5.) Further, Plaintiffs argue that 600 closings out of a total of about 2,000 closings is sufficiently "substantial" to make

venue in the Southern District of Florida appropriate.

In *Jenkins Brick*, the court addressed in detail the requirements of § 1391(a)(2). At the outset, the court stated that "[o]nly the events that directly give rise to a claim are relevant." *Jenkins Brick*, 321 F.3d at 1371. The court, in adopting the logic of the Eighth Circuit's holding in *Woodke v. Dahm*, 70 F.3d 983 (8th Cir. 1995), explained that "Congress therefore 'meant to require courts to focus on relevant activities of the defendant, not of the plaintiff.'" *Jenkins Brick*, 321 F.3d at 1371-72 (quoting *Woodke*, 70 F.3d at 985.). While certain kinds of events may be necessary preconditions to the events giving rise to the claim,[2] the court found that only those acts which were, in and of themselves, "wrongful" or had a "close nexus" to the wrong could form the basis of proper venue. *Id.* at 1372. In particular, in a breach of contract action, the court explained that the most important factor for venue analysis was the locus of the breach. *Id.*

Defendants are correct that Plaintiffs Complaint is entirely devoid of any allegation that the decision to breach the contract or any other acts related to the breach of contract occurred in Florida. Venue is based only on the fact that 600 of the closings took place in this district. (*See* Compl. ¶ 5.) Nevertheless, Count I for breach of contract contains two allegations of wrongful conduct: "Plaintiff Matthew Forbes had an agreement with Lenox and Shibley to close Lenox's loans in Florida" and "Defendants have breached the agreement as alleged in this complaint by, among other things, not sending all of their Florida closings to Matthew Forbes." (Compl. ¶¶ 74, 75.) However, the Complaint does not indicate that any negotiations related to the execution of

---

[2] In *Woodke*, the court stated, in terms of an alleged violation of the Lanham Act, 15 U.S.C. § 1125, as follows: "It is true that manufacturing the trailers was a necessary event, in a causal sense, to an attempt to pass them off, but we do not think that it is an event giving rise to [the plaintiff's] claim because it was not itself wrongful." *Woodke*, 70 F.3d at 985-86.

this contract took place in Florida. (Compl. ¶¶ 24-38.) Likewise, the Complaint does not indicate that the alleged acts constituting the breach of the contract took place in Florida. (Compl. ¶¶ 48-72.) This lack of allegations of conduct in Florida is supported by affidavits submitted by Shibley and Ehrlich stating that all business decisions made by Defendants in their dealings with Plaintiffs took place in Atlanta, Georgia. (*See* Shibley Aff. ¶ 13; Ehrlich Aff. ¶ 11.)

A thorough reading of the Complaint shows that the only activities that took place in Florida were the 600 closings.[3] While these closings were necessary to give rise to Plaintiffs causes of action, they are not the proximate cause of and have no "close nexus" with Plaintiffs' claims for breach of contract, unjust enrichment, fraud, and tortious interference. Indeed, the Court must look at the locus of Defendants' actions, not Plaintiffs' actions. Defendants are not alleged to have acted in Florida, nor has Plaintiff presented any evidence that Defendants wrongs were committed in Florida. Thus, the Court concludes that the Southern District of Florida is an improper venue for the instant action.

Pursuant to 28 U.S.C. § 1406, the Court may dismiss this action, "or if it be in the interest of justice, transfer" the case to "any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Whether dismissal or transfer of an action is more appropriate under § 1406(a) is in the sound discretion of the Court. *See, e.g., Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993). Transfer of a case is generally considered to be more in the "interest of justice"

---

[3]The Court doubts whether 600 out of 2000 closings can be termed "substantial," in any event. Less than one-third of the closings that Plaintiff claims give rise to its cause of action took place in Florida. The Court does not believe that less than one-third of the acts alone can constitute a "substantial part" of the acts in this case, when none of them are directly related to the causes of action asserted by Plaintiffs.

6

than outright dismissal of an action. *CAT Aircraft Leasing, Inc. v. Cessna Aircraft Co.*, 650 F. Supp. 57, 60 (D.V.I. 1986). If the Court elects to transfer a case, the Court must determine whether the transferee forum is one in which Plaintiff could have originally brought the action, both with respect to venue and personal jurisdiction. *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960).

In this case, Defendants have not offered any reasons to justify dismissal of this action instead of transfer of the action to the Northern District of Georgia. Thus, the Court believes that transfer to the Northern District of Georgia is appropriate. With respect to venue, Defendants are all residents of the Northern District of Georgia, and a substantial part of the acts leading to Plaintiffs' causes of action took place in the Northern District of Georgia. Thus, the Northern District of Georgia is an appropriate forum. Likewise, a court in the Northern District of Georgia will have personal jurisdiction over all of the Defendants. *See* Ga. Code Ann. § 50-2-21(a) ("The jurisdiction of this state and its laws extend to all persons while within its limits, whether as citizens, denizens, or temporary sojourners."). Thus, this case could clearly have been brought originally in the Northern District of Georgia.

**Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (DE 17) is **GRANTED IN PART**. Pursuant to 28 U.S.C. § 1406(a), the Clerk shall **TRANSFER** this case to the United States District Court for the Northern District of Georgia.

2. Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (DE 17) is **DENIED IN PART**. The Court declines to reach the merits of Defendants' claims under Fed. R.

Civ. P. 12(b)(1), (2) & (6).[4]

3. All other pending motions are **DENIED AS MOOT**. The Clerk shall **CLOSE THIS CASE**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 29th day of July, 2008.

                                         KENNETH A. MARRA
                                         United States District Judge

Copies furnished to:
all counsel of record

---

[4]For the sake of clarity, the Court does not doubt that it has subject matter jurisdiction over this dispute. In *Tamiami Partners, Ltd. ex rel. Tamiami Development Corp. v. Miccosukee Tribe of Indians of Florida*, 177 F.3d 1212 (11th Cir. 1999), the court explained that the Federal Arbitration Act does not alter the Court's jurisdictional powers. Thus, so long as the Court has jurisdiction over the underlying dispute allegedly subject to arbitration, the Court's jurisdiction is not disturbed by the presence of an arbitration clause. *Id.* at 1222-23.